UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JAMIE ARTHUR TRANKLE,

                Plaintiff,

v.

                Case # 16-CV-846-FPG

                DECISION AND ORDER

NANCY A. BERRYHILL,[1] ACTING COMMISSIONER
OF SOCIAL SECURITY,

                Defendant.

      Jamie Arthur Trankle ("Trankle" or "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

      Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 10. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner solely for calculation and payment of benefits.

## BACKGROUND

      On May 3, 2012, Trankle applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[2] 188-95. He alleged disability since May 17, 2011 due to chronic orchialgia of

---

[1]     Nancy A. Berryhill is now the Acting Commissioner of Social Security and is therefore substituted for Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).
[2]     References to "Tr." are to the administrative record in this matter.

1

the scrotum, manic depression, and bipolar disorder. Tr. 236. Trankle later amended his alleged onset date to April 2, 2012. Tr. 74-75.

On September 3, 2013, Trankle appeared and testified at a hearing before Administrative Law Judge ("ALJ") Nancy L. Pasiecznik. Tr. 72-102. Thereafter, ALJ Donald T. McDougall took over this case and on November 14, 2014, Trankle and a vocational expert ("VE") appeared and testified at a second hearing before ALJ McDougall. Tr. 17, 40-71. On April 8, 2015, the ALJ issued a decision finding that Trankle was not disabled within the meaning of the Act. Tr. 17-33. On August 30, 2016, the Appeals Council denied Trankle's request for review. Tr. 1-4. Thereafter, Trankle commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative

substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

**I.     The ALJ's Decision**

The ALJ's decision analyzed Trankle's claim for benefits under the process described above. At step one, the ALJ found that Trankle had not engaged in substantial gainful activity since the amended alleged onset date. Tr. 20. At step two, the ALJ found that Trankle has the following severe impairments: depression, bipolar affective disorder, and alcohol and marijuana abuse. *Id.* At step three, the ALJ found that these impairments met Listings 12.04 and 12.09. Tr. 20-23.

Pursuant to the SSA's regulations regarding drug or alcohol abuse ("DAA") the ALJ considered how Trankle's substance abuse affected the disability finding.[3] Tr. 23-25; *see* 42 U.S.C. §§ 423(c)(1)(A)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935. The ALJ concluded that if Trankle stopped abusing substances he would still have severe impairments but that those impairments, alone or in combination, would not meet or medically equal any Listings impairment. Tr. 23-25.

Next, the ALJ determined that if Trankle stopped abusing substances he would retain the RFC to perform the full range of work at all exertional levels but with nonexertional limitations.

---

[3] A claimant is not disabled under the Act if DAA would "be a contributing factor material to the Commissioner's determination that the individual is disabled." *See* 42 U.S.C. §§ 423(c)(1)(A)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935. "When DAA is shown to be at issue in a claim, the ALJ must make a finding as to the materiality of DAA to the claimant's disability, and this finding must be supported by substantial evidence." *Straughter v. Comm'r of Soc. Sec.*, No. 12-CV-825 DAB DCF, 2015 WL 6115648, at *21 (S.D.N.Y. Oct. 16, 2015) (citing *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 126 (2d Cir. 2012)). The materiality finding requires the ALJ to evaluate disability a second time to determine "whether the individual would still be disabled if he or she stopped using drugs or alcohol." *Cordero v. Astrue*, 574 F. Supp. 2d 373, 378 (S.D.N.Y. 2008) (citing 20 C.F.R. § 416.935(b)(2)); see also 20 C.F.R. § 404.1535(b)(2).

Tr. 25-32. Specifically, the ALJ found that Trankle cannot concentrate closely or maintain attention to detail for extended periods; can only occasionally interact with the public, coworkers, and supervisors; and cannot perform fast-paced, assembly line, or other high quota work. Tr. 25.

At step four, the ALJ indicated that Trankle has no past relevant work. Tr. 32. At step five, the ALJ relied on the VE's testimony and found that if Trankle stopped abusing substances he could adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 32-33. Specifically, the VE testified that Trankle could work as an industrial cleaner, hand packager, and warehouse worker. *Id.* Accordingly, the ALJ concluded that Trankle was not "disabled" under the Act. Tr. 33.

## II. Analysis

Trankle argues that remand is required because the ALJ violated the treating physician rule. ECF No. 9-1 at 17-24; ECF No. 11. Specifically, Trankle asserts that the ALJ failed to provide the requisite "good reasons" for discounting the opinion of his treating psychiatrist Irina Schwartz, M.D. *Id.* The Court agrees.

### A. Dr. Schwartz's Opinion

On August 28, 2013, Dr. Schwartz completed a mental RFC questionnaire. Tr. 579-83. She indicated that she treated Trankle since March 12, 2012. Tr. 579. Dr. Schwartz opined, among other things, that Trankle is "seriously limited"[4] in his ability to maintain attention for a two hour segment; maintain regular attendance and be punctual within customary, usually strict tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in a routine work setting; deal with normal work stress

---

[4] An individual's ability to perform a work-related function is "seriously limited" when his performance in that area would frequently be less than satisfactory in any work setting. Tr. 581.

and the stress of semiskilled and skilled work; and understand, remember, and carry out detailed instructions. *Id.*

Dr. Schwartz also noted that Trankle was most limited in his ability to maintain a consistent mood, concentration, and routine behavior under stress. Tr. 582. She opined that Trankle's impairments or treatment will cause him to be absent from work more than four days per month. Tr. 583. Dr. Schwartz noted that substance abuse contributes to Trankle's limitations and that his condition would improve somewhat if he stopped abusing substances, but that he would still be unable to perform full-time work. *Id.* She concluded that Trankle cannot engage in full-time competitive employment on a sustained basis. *Id.*

### B. Treating Physician Rule & the ALJ's Evaluation of Dr. Schwartz's Opinion

The "treating physician rule" is "a series of regulations set forth by the Commissioner . . . detailing the weight to be accorded a treating physician's opinion." *De Roman v. Barnhart*, No. 03 Civ. 0075 (RCC) (AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003) (citing 20 C.F.R. § 404.1527); 20 C.F.R. § 416.927. Under the treating physician rule, the ALJ must give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). While an ALJ may discount a treating physician's opinion if it does not meet this standard, the ALJ must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

Even when a treating physician's opinion is not given "controlling" weight, the ALJ must still consider several factors in determining how much weight it should receive. The ALJ must consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted); 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

Here, the ALJ summarized Dr. Schwartz's treatment notes and opinion and afforded her opinion only "little weight." Tr. 22, 28-29, 31. The ALJ discounted Dr. Schwartz's opinion because (1) it is inconsistent with her treatment notes and "with a relatively high [Global Assessment of Functioning][5] score of 60;" (2) it is inconsistent with treatment notes from other sources indicating that his "mental status examinations were largely unremarkable" when he was not abusing substances; and (3) he was "not completely truthful about his substance use while treating with Dr. Schwartz." Tr. 31. These reasons are addressed in turn below.

1. **Consistency with Treatment Notes and GAF Score**

The ALJ rejected Dr. Schwartz's opinion in part because it is "not consistent with treatment notes" or "with a relatively high GAF score of 60." Tr. 31. Although the ALJ may give more weight to a medical opinion that is supported by relevant evidence, *see* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3), the ALJ's conclusory assertion that Dr. Schwartz's opinion is

---

[5] Mental health professionals use Global Assessment of Functioning ("GAF") scores to assess an individual's overall functioning level. *See* Access Behavioral Health, Global Assessment of Functioning, *available at* https://www.omh.ny.gov/omhweb/childservice/mrt/global_assessment_functioning.pdf (last visited Nov. 29, 2017). The scale ranges from zero to 100 and a higher score indicates superior functioning. *Id.* Trankle's GAF score of 60 indicates that he had "moderate symptoms of mental illness" and that his "functioning in school, work, or social situations is moderate[ly] impaired." *See* MentalHelp.Net, What Does GAF Stand For?, *available at* https://www. mentalhelp.net/advice/what-does-gaf-stand-for/ (May 16, 2006) (last visited Nov. 29, 2017).

7

inconsistent with her treatment notes and assessed GAF score, without more, does not constitute a good reason to discount that opinion. The evidence demonstrates, in fact, that Dr. Schwartz performed numerous mental status examinations that consistently revealed concentration issues, psychomotor retardation, depressed mood, constricted affect, impaired judgment and insight, and anxious and depressed thought content. Tr. 547, 551, 607, 621-22, 631, 635, 640, 646, 648, 650. Dr. Schwartz's mental RFC questionnaire also specifically noted that the "clinical findings . . . that demonstrate the severity of [Trankle]'s mental impairments and symptoms" include moderate depressive symptoms, racing thoughts, strained concentration when untreated, and constricted affect." Tr. 579. All of these findings are reasonably consistent with Dr. Schwartz's opinion that Trankle cannot meet the mental demands of full-time competitive work.

It was also improper to discount Dr. Schwartz's opinion based on its alleged inconsistency with Trankle's GAF score of 60. *See Sirris v. Colvin*, No. 15-CV-1003-FPG, 2016 WL 6090585, at *4 (W.D.N.Y. Oct. 19, 2016) (noting that the ALJ improperly discounted a therapist's opinion because it was "inconsistent" with a single GAF score of 55). Courts in the Second Circuit have noted that GAF scores are of little probative value in the disability context. Although these scores are relevant, they do not necessarily contradict a medical source's opinion that the claimant is disabled, because GAF scores do "not have a direct correlation to the severity requirements in [the Commissioner's] disorders listings." *Seignious v. Colvin*, No. 6:15-cv-06065 (MAT), 2016 WL 96219, at *6 (W.D.N.Y. Jan. 8, 2016) (citations omitted); *see also Daniel v. Astrue*, No. 10-CV-5397 (NGG), 2012 WL 3537019, at *10 (E.D.N.Y. Aug. 14, 2012). Dr. Schwartz assessed the GAF score of 60 and nonetheless opined that Trankle's impairments prevent him from working. Tr. 579, 583. It is unclear to the Court how the ALJ, who is not a medical professional, concluded that a single GAF score of 60 undermined Dr. Schwartz's professional findings. *See Schmidt v.*

8

*Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("[J]udges, including administrative law judges of the [SSA], must be careful not to succumb to the temptation to play doctor."). The record also indicates that mental health professionals occasionally assessed Trankle with GAF scores below 60, which indicate a lower level of mental health functioning. *See* Tr. 381 (assessing GAF of 35), 684 (assessing GAF score of 33), 796 (assessing GAF score of 45), 809 (assessing GAF score of 45), 814 (assessing GAF score of 35), 824 (assessing GAF of 55).

### 2. Consistency with Treatment Notes from Other Medical Sources

The ALJ also discounted Dr. Schwartz's opinion because "treatment notes from other treating sources indicate that when his substance abuse was in remission, mental status examinations were largely unremarkable." Tr. 31 (citing Tr. 657-94, 738-81, 785-811, 826-28). Although the ALJ cites over 100 pages of medical records, he does not explain what evidence contradicts Dr. Schwartz's opinion. Moreover, these treatment notes contain only raw medical data and "[t]he ALJ's own interpretation of raw medical data does not justify rejecting a treating physician's opinion." *Pagano v. Comm'r of Soc. Sec.*, No. 16-CV-6537-FPG, 2017 WL 4276653, at *5 (W.D.N.Y. Sept. 27, 2017) (citation omitted).

This error is compounded by the fact that the ALJ afforded "significant weight" to state agency review psychiatrist J. Echevarria's opinion. Tr. 28-29, 31, 392-404. "The treating physician rule recognizes that a physician who has a long history with a patient is better positioned to evaluate the patient's disability than a doctor who observes the patient once for the purposes of a disability hearing." *Olejniczak v. Colvin*, 180 F. Supp. 3d 224, 228 (W.D.N.Y. 2016) (quotation marks and citation omitted). This rule is "even more relevant in the context of mental disabilities, which by their nature are best diagnosed over time. Thus, while the ALJ can consider the opinions of [consulting medical sources], absent more compelling evidence[,] their opinions should not be

9

given controlling weight over those of [a treating psychiatrist]." *Id.* (citation omitted) (alterations in original). Moreover, "when there are conflicting opinions between the treating and consulting sources, the 'consulting physician's opinions or report should be given limited weight.'" *Harris v. Astrue*, No. 07-CV-4554 (NGG), 2009 WL 2386039, at *14 (E.D.N.Y. July 31, 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)).

Here, Dr. Echevarria did not examine Trankle; rather, he merely reviewed the medical record on August 24, 2012 and opined that Trankle's impairments would not preclude simple work in a low stress environment and that if he stopped drinking his symptoms would improve. Tr. 28-29, 404. The ALJ afforded significant weight to this opinion based on its purported consistency with the record as a whole, yet the ALJ did not explain this conclusion or cite any evidence that supported Dr. Echevarria's assessment. Tr. 31. Moreover, after Dr. Echevarria rendered his opinion, Trankle underwent an additional two and a half years of mental health treatment by the time the ALJ issued his decision on April 8, 2015. The medical record contains a significant amount of evidence that post-dates Dr. Echevarria's assessment, and therefore his opinion is based on an incomplete record and is entitled to only little weight. *See Sweet v. Astrue*, 32 F. Supp. 3d 303, 315 (N.D.N.Y. 2012) (noting that a non-examining state agency review consultant's report was "based on an incomplete record" and "accordingly entitled to little weight") (citing *Griffith v. Astrue*, 08-CV-6004, 2009 WL 909630, at *9 (W.D.N.Y. Mar. 31, 2009) ("The State Agency Officials' reports, which are conclusory, stale, and based on an incomplete medical record, are not substantial evidence.")).

### 3. Truthfulness as to Substance Abuse

The ALJ also discounted Dr. Schwartz's opinion because Trankle "was not completely truthful about his substance use while treating with Dr. Schwartz." Tr. 31. However, the record

reveals that Trankle admitted to Dr. Schwartz when he relapsed and Dr. Schwartz's mental RFC questionnaire specifically notes that Trankle relapsed twice. Tr. 579, 648. Her questionnaire also diagnosed cannabis abuse and noted that alcohol and substance abuse contribute to Trankle's assessed limitations. Tr. 583. Thus, because Dr. Schwartz was clearly aware of Trankle's substance abuse problem, the Court finds that the ALJ's conclusory assertion that Trankle "was not completely truthful" with Dr. Schwartz does not constitute a good reason to discount her opinion.

Although the Commissioner offers several reasons why she believes the evidence of record supports the ALJ's decision and why Dr. Schwartz's opinion was entitled to only little weight, the Commissioner may not substitute her own rationale when the ALJ failed to provide one. *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("A reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action.") (quotation marks and citation omitted).

### C. Remand for Calculation of Benefits

District courts are authorized to affirm, reverse, or modify the Commissioner's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand for calculation of benefits is appropriate only in cases where the record "provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *see also Butts v. Barnhart*, 388 F.3d 377, 385-86 (2d Cir. 2004). Courts must avoid "contribut[ing] any further to the delay of the determination of [a claimant's] application by remanding for further administrative proceedings" when remand is unnecessary. *Diaz ex rel. E.G. v. Comm'r of Soc. Sec.*, No. 06-CV-530-JTC, 2008 WL 821978, at *8 (W.D.N.Y. Mar. 26, 2008); *see also McClain v. Barnhart*, 299 F. Supp. 2d 309, 310 (S.D.N.Y.

2004) (recognizing "delay as a factor militating against a remand for further proceedings where the record contains substantial evidence of disability").

Under the treating physician rule, the ALJ must give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Green-Younger*, 335 F.3d at 106. Here, as explained above, Dr. Schwartz's opinion is supported by her treatment notes and her opinion is not inconsistent with other record evidence, which documented impaired attention, concentration, and recent and remote memory skills, fair to poor insight and judgment, racing thoughts, depressed mood, and anxiety. *See, e.g.*, Tr. 381, 389, 421-22, 671, 678, 689, 714, 717.

Additionally, the other medical opinions of record, which were rendered by Dr. Echevarria and a consultative examiner, do not undermine Dr. Schwartz's opinion. Tr. 387-91, 392-404. A treating physician's opinion "is generally entitled to 'more weight' than the opinions of non-treating and non-examining sources." *Hamm v. Colvin*, No. 16CV936(DF), 2017 WL 1322203, at *17 (S.D.N.Y. Mar. 29, 2017) (citations omitted); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); S.S.R. 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996) ("In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.").[6] Rather, a consultative examiner's opinion is generally entitled to "little weight," because their examinations "are often brief, are generally performed without benefit or review of the claimant's medical history, and, at best, only give a glimpse of the claimant on a single day. Often, consultative reports ignore or give only

---

[6] The Court notes that S.S.R. 96-2p was recently rescinded, however, the rescission is only effective for claims filed on or after March 27, 2017. *See* Rescission of Social Security Rulings 96-2p, 96-5p, & 06-3p, 2017 WL 3928305, at *1 (S.S.A. Mar. 27, 2017). Therefore, S.S.R. 96-2p is still applicable to Trankle's claim, which was filed in May of 2012.

passing consideration to subjective symptoms without stated reasons." *Hamm*, 2017 WL 1322203, at *17 (citing *Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009) and *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 55 (2d Cir. 1992)).

Dr. Schwartz's opinion that Trankle will be absent from work more than four days per month establishes that he is disabled, because VE testimony revealed that an individual is unemployable if he will miss more than one day of work per month. Tr. 67-68, 583. Thus, additional proceedings would serve no purpose and would only further delay Trankle's claim, which has been pending for over five and a half years. Accordingly, the Court remands this matter solely for the calculation and payment of benefits.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is GRANTED and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is DENIED. The Commissioner's decision is REVERSED and this matter is REMANDED to the Commissioner solely for calculation and payment of benefits. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: December 3, 2017
       Rochester, New York

                                                   _____
                                                   HON. FRANK P. GERACI, JR.
                                                   Chief Judge
                                                   United States District Court